```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

MELISSA GUERRERO and              §
VERONICA VILLAREAL,[1]            §
                                  §
         Plaintiffs,              §
                                  §
v.                                §   CIVIL ACTION NO. 08-CV-2913
                                  §
THE BROCK GROUP a/k/a BROCK       §
MAINTENANCE a/k/a BROCK           §
SPECIALTY GROUP a/k/a BROCK       §
INCORPORATED,                     §
                                  §
         Defendant.               §
                                  §

**MEMORANDUM OPINION**

Pending before the court[2] is Defendant The Brock Group a/k/a Brock Maintenance a/k/a Brock Specialty Group a/k/a Brock Incorporated's ("Defendant") Motion for Summary Judgment (Docket Entry No. 15). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Defendant's Motion for Summary Judgment (Docket Entry No. 15).

## I. Case Background

Plaintiffs Melissa Guerrero ("Guerrero") and Veronica Villarreal ("Villarreal") (collectively, "Plaintiffs") initiated this action on September 30, 2008, asserting claims of sexual

---

[1] Although the case is styled with Veronica's last name spelled "Villareal," all of the text in the documents before the court have her last name spelled as "Villarreal," and thus the court uses the latter spelling throughout the remainder of this Memorandum Opinion.

[2] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 10.

harassment, retaliation, and intentional infliction of emotional distress ("IIED") against Defendant.[3]  Plaintiffs have since conceded their claims of sexual harassment and IIED, and thus the only claim remaining before the court is retaliation.[4]  Defendant moves for summary judgment on this claim.[5]

In early 2007, ConocoPhillips refinery in Borger, Texas, hired Defendant to perform work under three contracts: general maintenance, asbestos, and turnaround.[6]  Dean Vinson ("Vinson") was the site manager and Defendant's highest ranking employee at the refinery, where he oversaw various work crews, including crews for paint, scaffold, insulation, and asbestos.[7]

On March 8, 2007, Guerrero was working as a member of the scaffold crew when a co-worker, Daniel Gonzalez ("Gonzalez") approached her and gave her an unwelcome hug and kiss.[8]  The next morning, Gonzalez approached her again and made sexually explicit comments about her sexual orientation and relationship with Guerrero's long-term girlfriend Villarreal, who also worked on the

---

[3] Complaint, Docket Entry No. 1.

[4] See Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Response"), Docket Entry No. 18, pp. 7, 12-13.

[5] Defendant's Motion for Summary Judgment ("Motion"), Docket Entry No. 15.

[6] Response, Docket Entry No. 18, Ex. A, Deposition of Vinson, pp. 12-13.

[7] Id. at 10-11; Ex. B, Deposition of Ringo, p. 33.

[8] Id. Ex. C, Declaration of Guerrero, ¶ 3.

scaffold crew but who was out sick that day.[9]

At lunchtime, Guerrero spoke with her immediate supervisor Ignacio Barajas ("Barajas") to report Gonzalez's conduct.[10] Although Barajas made Gonzalez apologize to Guerrero, she was not satisfied with the way her complaint had been handled and so spoke with Barajas again about the matter.[11] Barajas instructed Gonzalez to apologize a second time and then transferred Guerrero, but not Gonzalez, to another crew.[12]

Still upset over the handling of the matter, Guerrero spoke with safety supervisor Robert Gonzalez ("Supervisor Gonzalez"), who took her back to the office where he briefly spoke with Barajas.[13] Barajas told Supervisor Gonzalez, "I'll take care of it."[14] Barajas then approached Guerrero and told her that, "It's been taken care of and you can go home at 2:30," even though Guerrero normally worked until 5:30, and that she should not return to work the next two days for her weekend shift.[15]

On Monday March 12, 2007, Villarreal and Guerrero returned to

---

[9] Id. ¶ 8. The specific statement allegedly made by Gonzalez is too vile to be repeated herein.  See id.

[10] Id. ¶ 6.

[11] Id.

[12] Id.

[13] Id. ¶ 7.

[14] Id. Ex. E, Deposition of Supervisor Gonzalez, pp. 12-13.

[15] Id. Ex. C, Declaration of Guerrero, ¶ 7.

work.[16]  Villarreal's co-workers made various disparaging comments toward her regarding the comments Gonzalez had made.[17]  Villarreal also talked to her supervisor Ernesto Portillo ("Portillo") with respect to Gonzalez's comments when Gonzalez kept staring at her when they next worked together, making Villarreal feel uncomfortable and humiliated.[18]

Meanwhile, Supervisor Gonzalez reported Guerrero's complaint directly to Vinson, who understood that Guerrero's complaint had been made on behalf of Villarreal as well.[19]  Later that day, Vinson met with Plaintiffs told them that he would look into the complaint and would get back to them.[20]

Over that day and the next, Plaintiffs and Vinson had several meetings until, sometime on Tuesday, March 13, 2007, Vinson told them that the asbestos work was ending and that Defendant was laying them off.[21]  Although Vinson claims that Plaintiffs told him they no longer wanted to work on the scaffolding crews and wanted

---

[16]   Id. Ex. F, Declaration of Villarreal, ¶¶ 5-6.

[17]   Id. ¶ 5.

[18]   Id. Ex. I, Deposition of Villarreal, pp. 14-15.

[19]   Id. Ex. A, Deposition of Vinson, p. 56; Ex. E, Deposition of Supervisor Gonzalez, p. 12.

[20]   Id. Ex. C, Declaration of Guerrero, ¶ 10; Ex. F, Declaration of Villarreal, ¶¶ 6-7.

[21]   Id. Ex. A, Deposition of Vinson, p. 28; Ex. C, Declaration of Guerrero, ¶ 11; Ex. F, Declaration of Villarreal, ¶ 7.

to be back on the asbestos crew, Plaintiffs deny ever saying this.[22] Gonzalez was suspended following the incident but continued to work on the scaffolding crew after Plaintiffs were laid off.[23]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedqwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex

---

[22] Id. Ex. A, Deposition of Vinson, pp. 28, 30, 59; Ex. C, Declaration of Guerrero, ¶¶ 12-13; Ex. F, Declaration of Villarreal, ¶¶ 8-11.

[23] Id. Ex. A, Deposition of Vinson, p. 27.

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson,

286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Title VII's anti-retaliation clause forbids an employer from acting in a way that discriminates against an employee because she has participated in a Title VII proceeding or has opposed an impermissible practice under Title VII. 42 U.S.C. § 2000e-3(a). Claims of retaliation based on Title VII are analyzed under the framework of McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802 & n.13 (1973); Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002). To sustain a claim thereunder, a plaintiff must first establish a prima facie case of retaliation. Id. "A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer who must furnish a legitimate nonretaliatory explanation. Lee v.

Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  If the employer provides such an explanation, then the inference of retaliation falls away and the burden shifts back to the employee to demonstrate the explanation is a mere pretext for retaliation. Id.

**A.   Plaintiffs' Prima Facie Cases**

   **1.   Protected Activity**

The court must first determined whether Villarreal established that she engaged in protected activity under Title VII.[24]  An employee has engaged in a protected activity if she has "opposed any practice made an unlawful employment practice by this subchapter" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The opposition clause requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful. Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981).

The summary judgment evidence establishes that, on Monday and Tuesday March 12 and 13, 2007, along with Guerrero, Villarreal made a verbal report to her site manager, Dean Vinson, with respect to Gonzalez's behavior and statements made with respect to her and

---

[24]   Defendant concedes that Guerrero engaged in protected activity under Title VII and thus that she meets the first element of her prima facie case. Motion, Docket Entry No. 15, p. 15.

8

Guerrero and with respect to harassing comments two of her co-workers had been making toward her in relation to what Gonzalez had said and done in the presence of Guerrero.[25]  Vinson told Villarreal that "it was being taken care of."[26]  Villarreal also talked to her supervisor Portillo with respect to Gonzalez's comments, because actions Gonzalez took when they had next worked together made Villarreal feel uncomfortable and humiliated.[27]  Viewing this evidence in the light most favorable to Villarreal, the court finds that Villarreal has presented sufficient evidence to create a fact issue as to her reasonable belief that at least Gonzalez's conduct, possibly along with that of her other co-workers, violated Title VII.  Thus, her reports of such conduct constituted activity protected by Title VII, and she meets the first element of her prima facie case.

### 2. Adverse Employment Action

Next, the court determines whether Plaintiffs suffered adverse employment actions.  While it is undisputed that both were laid off on Tuesday, March 13, 2007, Defendant contends that Plaintiffs requested to be laid off since they allegedly could not be moved from the scaffolding crew back to their old positions on the

---

[25]  Response, Docket Entry No. 18, Ex. F, Declaration of Villarreal, ¶¶ 6-7.

[26]  Id. Ex. I, Deposition of Villarreal, pp. 12-13.

[27]  Id. at 14-15.

asbestos crew.[28] Plaintiffs both contend, however, that they never told Vinson that they did not want to work on the scaffolding crew and that they never told him that they wanted to be laid off.[29] Thus, the summary judgment evidence creates a fact issue with respect to whether Plaintiffs suffered adverse employment actions. Therefore, Plaintiffs have met the second element of their prima facie cases.

### 3. Causal Link

The third element of Plaintiffs' prima facie case is whether there was a causal link between their protected activities and their subsequent lay-offs. Plaintiffs present only circumstantial evidence in support of this element.[30] A close timing between protected activity and an adverse employment action may be sufficient to establish a causal connection.[31] McCoy v. City of Shreveport, 492 F.3d 551, 561 n.28 (5th Cir. 2007) (citing Swanson

---

[28] See e.g., id. Ex. B, Deposition of Ringo, pp. 11, 19.

[29] Id. Ex. C, Declaration of Guerrero, ¶¶ 12-13; Ex. F, Declaration of Villarreal, ¶¶ 8-11.

[30] Plaintiffs present an unsworn handwritten document purporting to present direct evidence of a link between the protected activities and lay-offs, but because the evidence is not in competent summary judgment format, the evidence is not used for the purpose of deciding this motion. See id. Ex. G, Unsworn Declaration by Maria Martinez, p. 1.

[31] Defendant cites to Roberson v. Alltell Information Services, 373 F.3d 647, 655-56 (5th Cir. 2004), for the proposition that temporal proximity alone is not sufficient to establish a retaliation claim. Defendant's Reply to Response ("Reply"), Docket Entry No. 19, p. 8. The court in Roberson made clear, however, that temporal proximity alone was not enough only when analyzed in conjunction with that defendant's particular legitimate, nondiscriminatory reason, which was a company-wide reduction-in-force. Roberson, 373 F.3d at 656. Here, Defendant's reason for terminating Plaintiffs is different and, accordingly, must be analyzed anew.

v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)). The summary judgment evidence establishes that Gonzalez's initial harassing conduct occurred on March 8-9, 2007.[32] On March 12-13, 2007, Plaintiffs met with Vinson with respect to their alleged harassment.[33] During one of these meetings on March 13, Plaintiffs were told they were being terminated.[34] Thus, from the harassment to the reports to the terminations, only several days elapsed. This close timing is enough to establish a causal connection, and therefore, Plaintiffs have satisfied their burden of establishing prima facie cases of retaliation under Title VII.

**B. Defendant's Legitimate, Non-discriminatory Reasons**

Since Plaintiffs have established their prima facie cases, the burden of production shifts to Defendant to furnish a legitimate nonretaliatory explanation for each of their terminations. See Lee, 574 F.3d at 259. Defendant states that Plaintiffs requested to be laid off so they could receive unemployment benefits since Defendant could not honor their requests to be transferred from the scaffolding crew, where Gonzalez's harassment had occurred, back to their former asbestos crew.[35] Although Plaintiffs contest that they ever requested to be laid off, this reason is enough for Defendant

---

[32] See, e.g., id. Ex. C, Declaration of Guerrero, ¶¶ 3-4.

[33] See, e.g., id. ¶¶ 10-11.

[34] See, e.g., id. ¶ 11.

[35] See, e.g., id. Ex. A, Deposition of Vinson, pp. 28, 30, 58.

to meet its summary judgment burden on this point. Thus, a fact issue is raised and the court proceeds to the next step of the analysis.

**C. Plaintiffs' Evidence of Pretext**

Although "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation," after "the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." McCoy, 492 F.3d at 562 (quoting Swanson, 110 F.3d at 1188).

Here, Plaintiffs have presented evidence that the lay offs occurred on the second of two consecutive days that they met with Vinson concerning their harassment concerns.[36] As Plaintiffs state in their brief, "Vinson accepted the complaint[s], investigated the complaint[s], . . . and 'laid off' [Plaintiffs]," all within a forty-eight hour period.[37] As previously stated, Defendant is not asserting a reduction-in-workforce argument here.[38] Rather, Defendant relies on its assertion that Plaintiffs requested to be

---

[36] See, e.g., Response, Docket Entry No. 18, Ex. C, Declaration of Guerrero, ¶ 11.

[37] Id. at 11; see, e.g., id. Ex. C, Declaration of Guerrero, ¶¶ 10-11.

[38] Reply, Docket Entry No. 19, p. 5.

laid off so they could collect unemployment benefits.[39] Plaintiffs contest ever requesting to be laid off.[40] Thus, a fact issue is presented, and examining this evidence together in a light most favorable to Plaintiffs, this evidence is enough to infer that Defendant's reason for laying off Plaintiffs may be pretextual and that Plaintiffs' reports of harassment were the but-for causation element in Defendant's decision to terminate Plaintiffs.

Accordingly, having found that Plaintiffs have met their summary judgment burden on their claim of retaliation under Title VII, Defendant's motion for summary judgment is **DENIED**.

## IV. Conclusion

Based on the foregoing, the court **DENIES** Defendant's Motion for Summary Judgment (Docket Entry No. 15).

**SIGNED** in Houston, Texas, this 8th day of July, 2010.

Nancy K. Johnson
United States Magistrate Judge

---

[39] Id. at 18-19.

[40] Response, Docket Entry No. 18, Ex. C, Declaration of Guerrero, ¶¶ 12-13; Ex. F, Declaration of Villarreal, ¶¶ 8-11.